O8CUTORP

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        24 Cr. 474 (SLC)(CM)

 5    EMMANUEL TORRES,

 6                                        Plea
                    Defendant.
 7    ------------------------------x

 8                                        New York, N.Y.
 9                                        August 12, 2024
                                          10:00 a.m.
10

11    Before:

12                     HON. SARAH L. CAVE,

13                                        U.S. Magistrate Judge

14                           APPEARANCES
15
      DAMIAN WILLIAMS
16         United States Attorney for the
           Southern District of New York
17    BY:  BENJAMIN GIANNFORTI
           Assistant United States Attorney
18
      EPSTEIN SACKS, LLP
19         Attorney for Defendant
      BY:  SARAH M. SACKS
20

21

22

23

24

25
```

O8CUTORP

1    (Case called)

2                MR. GIANNFORTI:  Good morning, your Honor.

3    Ben Giannforti for the government.

4                THE COURT:  Good morning.

5                MS. SACKS:  Good morning, your Honor.  Sarah Sacks for

6    Emmanuel Torres, who is seated next to me at counsel's table.

7                THE COURT:  Good morning, Mr. Sacks.

8                Good morning, Mr. Torres.  Nice to meet you.

9                THE DEFENDANT:  Hi.  Good morning, your Honor.

10               THE COURT:  I'm Magistrate Judge Cave.

11               Just pull the microphone a little closer to you there.

12               And same for you, Ms. Sacks.

13               So that the court reporter is able to get everything

14   for us.  Thank you.

15               All right.  So, Mr. Torres, we're here this morning

16   for a plea allocution.  And I have before me a form entitled

17   Consent to Proceed Before a United States Magistrate Judge on a

18   Felony Plea Allocution that you've signed.  And what this form

19   says is that knowing that you have the right to have your plea

20   taken by a United States District Judge, you are agreeing to

21   have the plea taken by me, a United States Magistrate Judge.

22   Do you understand that, sir?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  Okay.  Great.

25               I will accept that consent, and I will ask my deputy

O8CUTORP

1    to please swear in Mr. Torres and also take the waiver of

2    indictment.

3            Thank you.

4            (Defendant sworn)

5            THE DEPUTY CLERK:  Thank you.

6            You are Emmanuel Torres?

7            THE DEFENDANT:  Yes.

8            THE DEPUTY CLERK:  Have you signed the waiver of

9    indictment?

10            THE DEFENDANT:  Yes.

11            THE DEPUTY CLERK:  Before you signed it, did you

12    discuss it with your attorney?

13            THE DEFENDANT:  Yes.

14            THE DEPUTY CLERK:  Did your attorney explain it to

15    you?

16            THE DEFENDANT:  Yes.

17            THE DEPUTY CLERK:  Do you understand what you are

18    doing?

19            THE DEFENDANT:  Yes.

20            THE DEPUTY CLERK:  Do you understand that you are

21    under no obligation to waive indictment?

22            THE DEFENDANT:  Yes.

23            THE DEPUTY CLERK:  Do you understand that if you do

24    not waive indictment, if the government wants to prosecute you,

25    they will have to present this case to a grand jury which may

O8CUTORP

1        or may not indict you?

2                    THE DEFENDANT:  Yes.

3                    THE DEPUTY CLERK:  Do you understand that by signing

4        the waiver of indictment you have given up your right to have

5        this case presented to a grand jury?

6                    THE DEFENDANT:  Yes.

7                    THE DEPUTY CLERK:  Do you understand what a grand jury

8        is?

9                    THE DEFENDANT:  Yes.

10                   THE DEPUTY CLERK:  Have you seen a copy of the

11       information?

12                   THE DEFENDANT:  Yes.

13                   THE DEPUTY CLERK:  Do you waive its public reading?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  Very good.  Thank you, Mr. Torres.

16                   So the purpose of this proceeding today is to make

17       sure that you understand your rights, to decide whether you're

18       pleading guilty of your own free will, and to make sure you're

19       pleading guilty because you are guilty and not for some other

20       reason.  Before accepting your guilty plea, there are a number

21       of questions I must ask you while you're under oath to

22       assure -- so that I can assure myself that it is a valid plea.

23       I may at times cover a point more than once and I may cover

24       matters that were also addressed in the Advice of Rights form

25       that you received.  If I do, that is because it is very

O8CUTORP

| 1 | important that you understand what is happening here today.  In |

1    important that you understand what is happening here today.  In

2    that regard, if you do not understand something that I ask you,

3    please say so, and I will reword the question or you may have a

4    chance to speak to your attorney.  Do you understand that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Okay.  And do you understand, Mr. Torres,

7    that any statements you make here may be used against you in a

8    prosecution for perjury or making false statements?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And please tell us again your full name.

11             THE DEFENDANT:  Emmanuel Torres.

12             THE COURT:  How old are you, sir?

13             THE DEFENDANT:  Thirty-four.

14             THE COURT:  Are you a citizen of the United States?

15             THE DEFENDANT:  Yes, I am, your Honor.

16             THE COURT:  Are you able to read and write in English?

17             THE DEFENDANT:  Yes.

18             THE COURT:  How far did you go in school, sir?

19             THE DEFENDANT:  Some college.

20             THE COURT:  And did you receive a degree?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  And are you now or have you recently been

23   under the continuing care of a doctor or a psychiatrist?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  Have you been hospitalized in the past for

O8CUTORP

1    mental illness?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Have you been hospitalized in the past for

4    alcoholism?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Have you hospitalized in the past for

7    narcotics addiction?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Thank you.  As you sit here today, are you

10   under the influence of any mind-altering drug or any alcoholic

11   drink?

12             THE DEFENDANT:  No, your Honor.

13             THE COURT:  And so far you've understood everything

14   that we've said to you?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And just to reconfirm, you've seen a copy

17   of the information in this case?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And have you read it?

20             THE DEFENDANT:  Yes, I have.

21             THE COURT:  And do you understand what it says you

22   did?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And have you had a chance to discuss the

25   charges and how you wish to plead with Ms. Sacks?

O8CUTORP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And are you satisfied with her

3   representation of you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And do you feel that you've had a full

6   opportunity to discuss your case with her?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Good.  So are you now ready to enter a

9   plea today?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Okay.  Good.  Mr. Giannforti, pursuant to

12   Federal Rule of Criminal Procedure 5(f) I need to confirm that

13   the government is aware of and has fulfilled its obligation

14   under *Brady v. Maryland* and its progeny to disclose to the

15   defendant all information whether admissible or not that is

16   favorable to Mr. Torres material either to guilt or to

17   punishment and known to the government.

18          MR. GIANNFORTI:  Yes, your Honor.

19          THE COURT:  Thank you.

20          Mr. Torres, Count One of the information charges that

21   from 2015 until 2022 you knowingly conducted, controlled,

22   managed, supervised, directed, and owned an unlicensed

23   money-transmitting business that smuggled bulk currency from

24   the United States to the Dominican Republic and that that

25   currency was derived from a criminal offense in violation of

O8CUTORP

1    18, U.S.C., Sections 1960 and 2.  Do you understand this

2    charge, sir?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And how do you wish to plead, guilty or

5    not guilty?

6              MR. GIANNFORTI:  Your Honor --

7              THE COURT:  Yes.

8              MR. GIANNFORTI:  -- just briefly, Ms. Sacks and I had

9    a conference right before this and I should have marked up the

10   plea agreement.  But Mr. Torres will actually be pleading to

11   conduct covering 2019 to 2022.

12             THE COURT:  Okay.

13             MR. GIANNFORTI:  We're happy to initial that change,

14   if you want to make it, just so the record's clear.

15             THE COURT:  Okay.  Yes.  So 2019 until 2022?

16             MS. SACKS:  Yes.

17             THE COURT:  Okay.

18             MS. SACKS:  I just wanted to, just to make clear, does

19   he need to be arraigned first on the information before he

20   pleads?

21             THE COURT:  Yes.  We can do that.  I didn't realize he

22   hadn't been arraigned.

23             MS. SACKS:  He has not been arraigned on the

24   information.

25             THE COURT:  Okay.  All right.  So we'll back up two

O8CUTORP

1    steps.  Why don't you make what changes you want to make to the

2    plea agreement and we'll just pause for a second.  Go ahead.

3                (Discussion off the record)

4                THE COURT:  All right.  So it's come to my attention,

5    Mr. Torres, that you have not been formally arraigned on the

6    information.  So I'm going to arraign you, conduct the

7    arraignment right now.

8                So I have before me an information that charges you

9    with one count of operation of an unlicensed money-transmission

10   business, and the information alleges that from 2019 through at

11   least in or about 2022, in this district and elsewhere, you

12   knowingly conducted, controlled, managed, supervised, directed,

13   and owned all or part of a money-transmitting business, and,

14   specifically, that that business smuggled bulk currency from

15   the United States including Manhattan to the Dominican Republic

16   without complying with the relevant registration requirements

17   and that you knew that the smuggled currency was derived from a

18   criminal offense and was intended to be used to promote and

19   support unlawful activity, and that that offense is in

20   violation of 18, U.S.C., Sections 1960 and 2.

21               For purposes of the arraignment, how do you wish to

22   plead to this charge?

23               THE DEFENDANT:  Not guilty, your Honor.

24               THE COURT:  Okay.  Thank you.

25               So that the record will reflect that Mr. Torres has

O8CUTORP

been arraigned on the information and an initial plea of not

guilty has been entered on his behalf and we'll make sure that

that is completed for the docket.

So, now, to return to the change of plea and the

allocution, Mr. Torres, again, as I just read, Count One of the

information charges from 2019 until 2022, you knowingly

conducted, controlled, managed, supervised, directed, and owned

an unlicensed money-transmitting business that smuggled bulk

currency from the United States to the Dominican Republic and

that that was derived from criminal offense from violation of

18, U.S.C., Sections 1960 and 2.  Just, again, to confirm, do

you understand that charge?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And, now, for purposes of the plea

allocution, how do you wish to plead to that charge, guilty or

not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Okay.  Thank you.  Now, with respect to

the count in the information charging you with operating an

unlicensed money laundering business, I want you to understand

that the maximum penalty is a prison term of five years, a term

of supervised release of three years, a fine of as much as of

$250,000 or twice what was gained because of the criminal

activity, or twice what someone other than yourself lost

because of the criminal activity, and a mandatory special

O8CUTORP

1    assessment of $100.  Do you understand these maximum penalties

2    that I've just described, Mr. Torres?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Good.  Thank you.  And do you understand

5    that as part of your guilty plea you're required to give up or

6    forfeit to the government any money or property you've received

7    from the offense or that was used to commit the offense, and

8    here, specifically, you're agreeing to give up 60,000 in United

9    States currency representing the property that was involved in

10   the offense to which you're pleading guilty?  Do you understand

11   that, sir?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Thank you.  In addition, the Court could

14   order you to pay restitution to any victims.  Do you understand

15   that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you also understand that if, as part of

18   your sentence, you were placed on a term of supervised release

19   and you then violated any of the conditions of that release,

20   you could face an additional term of imprisonment?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  You told me earlier that you're a citizen

23   of the United States.  I'm required to advise you that if, in

24   fact, you are not a U.S. citizen, a finding that you're guilty

25   of a felony offense may have a negative impact on your

O8CUTORP

immigration status and on any application you may make in the

future for permission to remain in the United States or to

become a United States citizen.  You may also be subject to an

order of deportation, as a result of this guilty plea, if you

are not --

I'm sorry.  Let me just say that again.

You may also be subject to an order of deportation,

and as a result of this guilty plea removed from the United

States.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you wish -- I'm sorry.  Do you

understand that you have the right to plead not guilty to this

charge and a right to a jury trial if you wish?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Do you understand that if you pled

not guilty and went to trial, you would be presumed innocent

and the burden would be on the government to prove your guilt

beyond a reasonable doubt to a jury of 12 people?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Torres, I want you to understand that

there are a number of other rights that you would have if you

pled not guilty and went to trial.  You have the right to be

represented by counsel, and if necessary, have the Court

appoint counsel to represent you at the government's expense at

trial and at every other stage of the proceeding.  At a trial,

O8CUTORP

1   you would be entitled to confront and cross-examine any

2   witnesses called by the government to testify against you.  You

3   would be entitled to testify on your own behalf.  You could

4   call witnesses and present evidence and the Court would compel

5   the attendance of witnesses you wished to call at trial.  Also,

6   at a trial, you would not be required to testify against

7   yourself.  If you were convicted at trial, you would have the

8   right to appeal that verdict to a higher Court.  Do you

9   understand all the rights I have just mentioned?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And, Mr. Torres, do you understand that

12  you're giving up all these rights if you plead guilty today?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  If you do plead guilty, you're also giving

15  up the right not to incriminate yourself, and in a few moments

16  I will ask you questions about what you did to satisfy myself

17  that you're actually guilty.  By pleading guilty then you are

18  admitting your actual guilt as well as your legal guilt.  Do

19  you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  I further advise you that many of the

22  civil rights that I have mentioned a moment ago as well as the

23  right to vote are controlled by state law, and so the specific

24  consequences of a felony conviction will vary from state to

25  state.  Mr. Torres, do you understand that if you enter a

O8CUTORP

1    guilty plea today, you will not be able to withdraw this plea,

2    there will be no trial, and the only remaining step in this

3    case will be the sentencing?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Do you understand that even if you're

6    surprised or disappointed by your sentence, you're still bound

7    by your guilty plea?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  I have before me a letter dated

10   August 12, 2024, from the U.S. Attorney to your attorney

11   containing a plea agreement.  Have you read this letter?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  And the signature that I see before me is

14   yours on the last page?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Okay.  And before you signed it, did you

17   discuss it with Ms. Sacks?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And did she explain to you all of its

20   terms and conditions?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Now, apart from what's contained in this

23   letter, did anyone make any promises to you in order to get you

24   to plead guilty?

25           THE DEFENDANT:  No, your Honor.

O8CUTORP

1          THE COURT:  Now, in reviewing the plea agreement, I

2     note that it contains -- sorry --

3          Apart from what's contained in the letter, did anyone

4     make a promise to you about the sentence you would receive in

5     order to get you to plead guilty?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  In reviewing the plea agreement, I note

8     that it contains an analysis of how part of our law of

9     sentencing known as the sentencing guidelines may impact any

10     prison term in your case.  Based on that analysis, the

11     agreement states the conclusion that the guidelines sentencing

12     range can be expected to be 18 to 24 months' imprisonment and

13     the fine range $7,500 to $75,000.  Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Thank you.  Do you understand that the

16     sentencing judge, Judge McMahon, is required to make her own

17     independent calculation of the appropriate sentencing range

18     under the sentencing guidelines and will also have the

19     discretion to give you a sentence below or above that range up

20     to the maximum sentence of five years that I told you about

21     earlier.  Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  In addition to the sentencing guideline,

24     Judge McMahon will also consider the factors set forth in 18,

25     U.S.C., Section 3553(a).  Those factors include but are not

O8CUTORP

```
1   limited to the nature and circumstances of the offense, your
2   history and characteristics, the need to the sentence imposed
3   to reflect the seriousness of the crime, to deter criminal
4   conduct, and protect the public, while also providing you with
5   any needed education, training, or medical care, and the kinds
6   of sentences available.  In order words, Judge McMahon will
7   pronounce whatever sentence she believes is the appropriate
8   sentence for you even if that sentence is different from the
9   one in the plea agreement.  Do you understand that?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  Judge McMahon will also consider a
12  presentence report prepared by the probation department in
13  advance of your sentencing before you're sentenced.  You and
14  the government will have an opportunity to challenge the facts
15  in that report.  Do you understand that?
16              THE DEFENDANT:  Yes, your Honor.
17              THE COURT:  There is no parole in the federal system,
18  Mr. Torres.  Thus, if you're sentenced to prison, you will not
19  be released on parole.  Do you understand that?
20              THE DEFENDANT:  Yes, your Honor.
21              THE COURT:  Do you also understand that under the
22  terms of this plea agreement if Judge McMahon sentences you to
23  a prison term that is 18 to 24 months or less you're giving up
24  your right to appeal that sentence or to challenge it in any
25  other way such as through a writ of habeas corpus.  Do you
```

O8CUTORP

1    understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  And do you understand that the plea

4    agreement says that you cannot appeal any forfeiture amount

5    less than or equal to $60,000, any fine of $75,000 or less, any

6    special assessment of $100 or less, and any lawful sentence of

7    supervised release?  Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  So you're giving up your right to appeal

10   each of those issues?  Do you understand?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Do you also understand that the plea

13   agreement provides that you're giving up your right to complain

14   if the government withheld evidence from your attorney that

15   would have been helpful to you?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Giannforti, are there any provisions

18   of the plea agreement you'd like me to review with Mr. Torres?

19             MR. GIANNFORTI:  You may have said this and I missed

20   it, your Honor, but just to advise the defendant of the

21   guidelines reflected in the plea agreement are not binding on

22   Judge McMahon, and indeed the guidelines are advisory --

23             THE COURT:  I believe I did say that.

24             MR. GIANNFORTI:  I'm sorry if I didn't catch it.

25             THE COURT:  I'm happy to go over it one more time.

O8CUTORP

1          So I was discussing the sentencing guidelines earlier.

2     First of all, those guidelines are advisory.  They're not

3     binding.  Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Okay.  But in any event, Judge McMahon

6     will make a decision based on all the facts that are presented

7     to her in your case, and she can give you a sentence -- she

8     doesn't have to give you the sentence that's in the plea

9     agreement.  She can give you a sentence anywhere up to the

10    maximum sentence of five years that I mentioned earlier.  Do

11    you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Ms. Sacks, any provisions that you'd like

14    me to review with Mr. Torres?

15         MS. SACKS:  No, your Honor.

16         THE COURT:  You know, so knowing everything that I've

17    explained to you this morning, Mr. Torres, do you still wish to

18    plead guilty to Count One of the information?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Did anyone use any force or make any

21    threats, either directly or indirectly, to influence how you

22    plead today?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  And is your plea voluntary, of your own

25    free will?

O8CUTORP

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  And did you, in fact, commit the offense

3    charged in Count One of the information?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Now, before I ask you to tell me what you

6    did, I will ask the government to summarize the elements of the

7    offense and summarize any evidence they would offer at trial.

8           Mr. Giannforti?

9           MR. GIANNFORTI:  Your Honor, in order to sustain its

10   burden of proof with respect to Count One of the information,

11   the government would have to prove the following elements

12   beyond a reasonable doubt:  First, that the business in

13   question was in the license money-transmitting business;

14   second, that the business was controlled, conducted, managed,

15   supervised, directed, or owned with knowledge that it was used

16   as an unlicensed money-transmitting business; and, third, that

17   operation of the money-transmitting business affected

18   interstate or foreign commerce.  And with respect to venue, the

19   government would have to prove that venue is appropriate in

20   this district by a preponderance of the evidence.

21          And the evidence, your Honor, at trial would consist

22   largely of testimony from two different cooperating witnesses,

23   law enforcement testimony, recordings of the cash handoff

24   that's reflected in the underlying complaint here as well as

25   text messages between the defendant and one of the government's

O8CUTORP

1    cooperating witnesses.

2            THE COURT:  Thank you, Mr. Giannforti.

3            All right.  Mr. Torres, it's now time for you to tell

4    me in your own words what you did that makes you guilty of the

5    charge in Count One of the information.

6            THE DEFENDANT:  From approximately 2019 to June 2022,

7    I agreed a handful of times to take money to the Dominican

8    Republic on behalf of someone else for a small fee.  I didn't

9    have a license to operate a money-transmission business, nor

10   did I comply with any of the registration requirements to

11   conduct a money-transmission business.  I also had reason to

12   know that the funds provided to me were from illegal activity.

13           I am extremely sorry for what I did.

14           THE COURT:  Thank you, Mr. Torres.

15           And from 2019 to 2022, where were you residing?

16           THE DEFENDANT:  I was residing at the time in Queens

17   and also in Florida.

18           THE COURT:  Okay.  And in connection with your

19   agreement to take money to the Dominican Republic, did you come

20   into Manhattan or the Bronx?

21           MR. GIANNFORTI:  Your Honor, the government can

22   proffer evidence.

23           THE COURT:  Yes.

24           MR. GIANNFORTI:  One of the cooperating witnesses

25   would testify that one or more of the money handoffs that

O8CUTORP

1    happened before law enforcement got involved happened in

2    Manhattan.

3            THE COURT:  All right.  Thank you.

4            So is that -- is that your recollection, Mr. Torres,

5    that there was a money exchange that took place here in

6    Manhattan?

7            THE DEFENDANT:  I don't remember being in Manhattan.

8            THE COURT:  Okay.  What about the Bronx?

9            THE DEFENDANT:  No.

10           THE COURT:  Did you have any -- did you meet with the

11   government or the cooperating witnesses, did you come into

12   Manhattan or the Bronx to meet with them at any point --

13           THE DEFENDANT:  No.

14           MR. GIANNFORTI:  So, your Honor, I think -- I believe

15   that there are also -- the cooperating witness would testify

16   that during the money handoff that's reflected in the

17   underlying complaint they were on the phone, sort of, as he was

18   driving from the -- the cooperator was driving from New Jersey,

19   met the defendant in Brooklyn, and I believe that he said, at

20   one point, like, I'm going over the bridge, the only bridges

21   that connect New Jersey to Brooklyn, you have to go over the

22   George Washington Bridge or the Tappan Zee Bridge, both of

23   which are in the district.

24           THE COURT:  Is that the case, Mr. Torres?  Did you

25   travel through --

O8CUTORP

1          MR. GIANNFORTI:  I'm sorry.  It's the other way

2    around.  The cooperator traveled from New Jersey to Brooklyn.

3          THE COURT:  I see.  So, Mr. Torres, you were in

4    Queens, but the -- are you aware of whether the cooperating

5    witness that the government has referred to, that person

6    traveled through the Southern District of New York?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Okay.  Thank you.  And do you remember

9    approximately how many times you agreed to take money to the

10   Dominican Republic?

11         THE DEFENDANT:  Just a handful of times.

12         THE COURT:  So five or less?

13         THE DEFENDANT:  Five or less.  Yes.

14         THE COURT:  And you knew that you did not have a

15   license to do so, correct?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And you also didn't complete any of the

18   steps required to register as a money-transmission business,

19   correct?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And the money that you were transporting,

22   did you understand where that money was coming from?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And where did you understand that it was

25   coming from?

O8CUTORP

1          THE DEFENDANT:  I guess from the streets.

2          THE COURT:  Did you understand -- by "the streets" do

3    you mean that it had an illegal origin?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Are there any other questions,

6    Mr. Giannforti?

7          MR. GIANNFORTI:  No.  Thank you.

8          THE COURT:  Ms. Sacks?

9          MS. SACKS:  No, your Honor.

10         THE COURT:  But otherwise, Ms. Sacks, is there any

11   other dispute about venue in this case?

12         MS. SACKS:  No, your Honor.

13         THE COURT:  Okay.  Thank you.

14         Based on Mr. Torres' responses to my questions and my

15   observation of his demeanor here today, I find that he's fully

16   competent to enter an informed plea today, and I also conclude

17   that he understands the nature of the charges and the

18   consequences of his plea.  I'm satisfied that his plea is

19   voluntary and that there is a factual basis for it.  So I will

20   recommend to Judge McMahon that the proffered plea to Count One

21   of the information be accepted.

22         And it's my understanding that she has not yet set a

23   sentencing date.  So 120 days would be December 10th.  So I'm

24   happy to set that as a control date, unless there's a

25   preference for a different date.

O8CUTORP

1          MR. GIANNFORTI:  I'm almost certainly going to be on

2     trial on December 10th.  So if we could push it into

3     earlier -- recognizing it's a control date, but maybe we can

4     set a control date early 2025.

5          THE COURT:  Any objection?

6          MS. SACKS:  That's fine.

7          THE COURT:  Okay.  We'll just pick a date that works

8     in January.  How about the 6th, which is a Monday?

9          MR. GIANNFORTI:  That should be fine.

10          THE COURT:  Obviously, you all should contact

11     Judge McMahon's chambers.

12          MR. GIANNFORTI:  Of course.

13          THE COURT:  Anything further then, Mr. Giannforti?

14          MR. GIANNFORTI:  No.  Thank you.

15          THE COURT:  Ms. Sacks?

16          MS. SACKS:  No, your Honor.

17          THE COURT:  Okay.  Thank you for your cooperation here

18     today.

19          Mr. Torres, I wish you the best.

20          THE DEFENDANT:  Thank you.

21          THE COURT:  Thank you, everyone.  And we'll be

22     adjourned.

23          MR. GIANNFORTI:  Thank you.

24                              o0o

25