UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- against -

EMMANUEL TORRES,

Defendant.

24 CR. 474 (CM)

**SENTENCING SUBMISSION
ON BEHALF OF DEFENDANT EMMANUEL TORRES**

# EPSTEIN SACKS PLLC

## ATTORNEYS AT LAW
### 100 LAFAYETTE STREET - SUITE 502
### NEW YORK, N.Y. 10013
### (212) 684-1230
### Fax (212) 571-5507

BENNETT M. EPSTEIN: (917) 653-7116
SARAH M. SACKS: (917) 566-6196

February 19, 2025

Hon. Colleen McMahon
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

**Filed on ECF**

<u>United States v. Emmanuel Torres</u>
24 Cr. 474 (CM)

Dear Judge McMahon:

We represent Emmanuel Torres pursuant to the Criminal Justice Act. On August 12, 2024, he pleaded guilty pursuant to an Information to one count of operating an unlicensed money transmission business pursuant to 18 U.S.C. Section 1960. He is scheduled to be sentenced by the Court on March 5, 2025. We submit this letter, along with letters from Emmanuel and his family and friends, as our sentencing submission. For the reasons that follow, we respectfully submit that a sentence of time served with a period of post release supervision that could include special conditions set by the Court is one that is "sufficient but not greater than necessary" to serve the purposes of sentencing under 18 U.S.C. §3553(a).

There are a number of factors that we respectfully submit support such a sentence in this case. For starters, Emmanuel has no criminal history and, but for his conduct here, has lived a law-abiding life. He quickly accepted responsibility in this case, agreeing to plead guilty pursuant to an information prior to being indicted or receiving discovery. Such a sentence would also be appropriate when one considers the circumstances leading up to him to engage in this conduct, which includes him having been physically and verbally abused and taken advantage of by former romantic partners. While we do not mean to suggest that this excuses what Emmanuel did, we believe that it clouded his better judgment.

Moreover, also weighing against even minimal jail time in this case (and evidencing his good character), is Emmanuel's history of continuous legal employment and that his family relies

on him for support. In particular, after his mother died suddenly, Emmanuel moved back in with his father and has taken over the role of managing his affairs since his father speaks limited English. This includes, among other things, accompanying his father to doctors' appointments, paying his mortgage, collecting rent and overseeing the tenants who live in the other part of their two-family home—tasks his mother had performed prior to her death. Given their close bond, built in large part because of the shared trauma they have experienced by losing both Emmanuel's mother and sister unexpectedly, sending Emmanuel to jail for any period of time would be devastating for his father.

We also submit that a sentence of time served with a period of supervised release would avoid unwarranted sentencing disparities. As the Court may be aware, two other judges in this District have recently sentenced flight-attendant defendants in similar cases. In *United States v. Charlie Hernandez*, 24 Cr. 447 (RA), Judge Abrams sentenced a defendant who had higher advisory guidelines (24 to 30 months) to three months incarceration to be followed by three years of post-release supervision including a nine-month period of home incarceration. In *United States v. Sarah Valerio Pujols*, 24 Cr. 442 (NRB), Judge Buchwald sentenced a defendant with the same agreed-upon guidelines (18 to 24 months) to time served with one year of post release supervision—the sentence that we submit would accomplish the purposes of sentencing in this case. As we understand the facts, the defendants in the above-captioned cases were involved in this conduct for longer than Emmanuel, and at least with respect to Mr. Hernandez, had transported a significantly larger sum of money.

### I.      Emmanuel Comes From a Loving and Supportive Family that has Been Devastated by the Unexpected Deaths of First his Sister and Later his Mother

Emmanuel was born on April 23, 1990 in New York, New York to parents Rafael and Marfi Torres. Emmanuel's parents immigrated from the Dominican Republic in the 1970s in search of a better life for their family. Before retiring, his father was a handyman and his mother worked for a janitorial cleaning service company. Emmanuel was the youngest of three siblings. He has an older brother, Jose. His older sister, Ckeidy, died suddenly at the age of 13 from a ruptured brain aneurysm.

This loss was very difficult for the Torres family, however it resulted in them being extremely close knit. As Emmanuel describes it, during his childhood they went everywhere together, and his mother in particular was very protective over her two sons. He grew up in a strict catholic household and attended church regularly. This made it very difficult for him to come out to his parents when he recognized that he was gay as he did not want to disappoint them. Although generally speaking Dominican culture can be unaccepting of homosexuality, and his parents held false stereotypes, they remained supportive and loving.

Emmanuel graduated from high school with honors and spent two years at Queens Community College before he withdrew. At the time, he had been working while going to school and opted to enter the workforce full time. His parents had instilled in him a strong work ethic. He had his first job when he was in high school reshelving books at the Bushwick branch of the public library. While in college, he worked at the clothing retailer Zara, where he had been promoted to a visual merchandiser, and as an overnight photo technician at a CVS pharmacy.

In 2011, Emmanuel secured a job as an airport operations agent for Jet Blue airlines and JFK airport. In 2012, he started working for Delta airlines as a reservation agent. In 2014 he became a flight attendant. He worked his way up from shorter domestic flights to international flights to Europe. He left that job in 2024 because of his arrest in this case.

In August 2019, while he was working and had just landed on an outbound flight, he received a call from his godmother that his mother had fallen ill and been taken to the hospital. She told him to come back as soon as he could. However, by the time he was able to get a flight back, it was too late. His mother had suffered a massive heart attack and died. Emmanuel had seen her in the morning before he left for work and she had seemed to be in good health. As Emmanuel describes it, his mother was his "best friend" and his "rock." Prior to her death, his mother and father had been inseparable. Needless to say, this loss has been heart breaking for both of them.

## II.    Emmanuel's Participation in the Charged Conduct

It was through his work at Delta airlines that Emmanuel met Jarol Fabio, who was also a flight attendant, and they began dating in 2016. They dated until approximately 2021



It was Jarol who introduced Emmanuel to someone named ███████ Emmanuel knew him as one of Jarol's friends. At some point he learned that Jarol was taking packages of money to the Dominican Republic for him. (Jarol has pleaded guilty to the same charge as Emmanuel and is awaiting sentencing in front of Judge Subramanian. *See United States v. Jarol Fabio*, 24 Cr. 481 (AS).) Jarol described it to Emmanuel as "easy," and a way he could make some extra money and prove that he could be more independent. Although Emmanuel met Jesus in approximately 2017, he did not take a package for him until sometime later—he believes it was in 2019 after his mother had passed away.

After Emmanuel and Jarol broke up for good in 2021, Emmanuel started dating another romantic partner named Alex who took advantage of him financially. In August 2022, they moved to Florida together, where the plan was for the two to split the rent and other living expenses, that is, until Alex lost his job. Emmanuel worked jobs at the Apple store and TJ Maxx in addition to

continuing his work as a flight attendant—three jobs in total—so that he could support them both. Emmanuel took out two personal loans, which in addition to the loan he took out so that Alex could get a car, still has him in debt.

Alex eventually got a job offer in North Carolina, and in December 2022, Emmanuel moved there with him. However, even with a job Alex did not contribute to their household financially. In July 2023, they broke up and Emmanuel moved back to the New York City area.

It was because he was struggling to keep up with his loan payments that Emmanuel reached out to █████ again. Emmanuel estimates that in total he took approximately five packages of money to the Dominican Republic for █████ (approximately three or four times between 2019 and 2021 while he was in a relationship with Jarol, and then the one time in June 2023). Emmanuel never counted the amount of money █████ gave him, but he estimates that he received under $10,000 in total for his conduct. He did not discuss directly with █████ or Jarol what the source of the money was but acknowledges that he had reason to know that it was from illegal conduct.

## III. Emmanuel's Good Character and Plans for the Future

When Emmanuel ended his relationship with Alex and moved back to New York in approximately July 2023, he had originally planned to live in Queens by himself. However, his father really needed his support both emotionally and as company, so he moved back to his childhood home where he had grown up in the Bushwick section of Brooklyn. As a testament to how close his family is, his mother's sister and brother, and her brother's wife, who more recently came from the Dominican Republic now also live with them. It is a two-family home with separate entrances—Emmanuel, his father, his aunts and uncle live in one part, and they rent the other part to tenants. Emmanuel has taken over the roles his mother used to play, including as the "glue" that keeps his family together. As his father explains in his letter to the Court (which has been translated from its native Spanish): "Emmanuel came back to live with me and he has been my emotional unconditional support for the last six years, so I depend on him to continue day to day taking care of my responsibilities." Since his father does not speak English, Emmanuel communicates with the tenants, collects the rent, and manages household expenses and his finances, including paying the mortgage on the property. He also accompanies his father when he has to go to the doctor and to other appointments.

Emmanuel also maintains a close relationship with his older brother, who is an aviation engineer, and his nephew who live in Meriden, Connecticut. It is clear that, having lost both his sister and his mother unexpectedly and before their time has drawn the men in the Torres family closer together. As Emmanuel's brother explains to the Court:

> After the passing of our mother a few years ago, my brother had a hard time processing and dealing with it. We all did, it was a very difficult time, and still continues to be. However he has fought the pain and kept our mothers spirit alive for my father and I, in times of holidays and gathering. We have become closer because of this, we only have each other left in our immediate family.

4

The letters from Emmanuel's other family and friends similarly describe his kind-hearted character and how he has always been there to support them in their times of need. For example, in her letter (also translated from Spanish), his cousin Anais Menicucci Capellán writes:

> I came to live in this country and despite the pain and horrible moment he was going through [having just lost his mother unexpectedly Emmanuel] gave us his support he was there for us from the moment we boarded the plane, he dedicated himself every day to helping us in the search for work, he worried that we did not lack absolutely anything, we arrived in this country in winter time and thanks to Emmanuel we had the necessary instruments to be able to be prepared and not go through any type of bad weather, or inconvenience, he always supported us and guided us on the best path so that things would be less hard for us in this new experience that we were living mostly from our great loss, I personally can say that Emmanuel has always been a great example to follow for me, as I mentioned before I learned from him that I can be and get where I want as long as I worked with discipline and effort, I learned that the family and especially the mother comes above everything regardless of differences, because it is another thing that I must say about him, Emmanuel as a son was the best, for his mother there was never a NO, his mother only had to say what she needed and he was always there for her, Emmanuel has always been a human being attached to helping and collaborating when he is needed, an example of this is that in special moments for me in which I needed an older brother he has always been there for me, advising me and trying to make me see the positive side of life, in short I can summarize that Emmanuel Torres in my eyes is an example of overcoming and resilience, since despite that dark moment that enveloped us almost six years ago, he has continued forward, working and supporting us, his family regardless of time, place or time.

Jessica Infante, his godmother and the mother of his nephew, who has known him since childhood shares:

> Emmanuel has always been a reliable person who is dedicated to his family and friends. For example in September of 2018, my apartment burned down and my son (his nephew) who was 14 at the time, and I were left homeless and with nothing. For a year, Emmanuel and his parents made sure we had a roof above our heads and home cooked meals. Emmanuel would often care for us and make sure we felt at home and like we did not miss anything. He and his parents did not ask for anything in return. Once my apartment was ready to be moved back into and I needed to transition back home, Emmanuel lost his mother. Through his devastating pain, he pushed through and was able to help me with my move and settling in. He made sure that both his nephew and I

5

were comfortable. Emmanuel has always been of great support during difficult times. He is a caring individual who puts others before himself.

While this case and losing his job as a flight attendant have been devastating for Emmanuel—as described in the letters to the Court, for him it was a "dream job," he understands that he has no one to blame for that but himself. However, Emmanuel was quick to hit the pavement to look for new work. Given his arrest, finding employment has not been easy, but he found a job working for a car rental company. He continued to look for better opportunities and, after going on many interviews, three months ago he was hired as a manager at a storage facility in Bayside, Queens. He works long hours—often taking double shifts—and although his job is not glamorous in the way that being a flight attendant allowed him to travel and see the world, he is grateful to have a job both so that he can contribute to his household and for his own mental health.

## IV.    A Sentence of Time Served with Supervised Release Including Conditions to be Set by the Court would Serve the Purposes of Sentencing Here

For all of the reasons described herein, we respectfully submit that a sentence of time served with a period of supervised release is a just sentence and would achieve all the goals of sentencing in this case. This is the same sentence that Judge Buchwald provided in a case with a defendant who had engaged in the same conduct, albeit for a longer period of time, and who, when confronted lied to the authorities about the amount of cash she was carrying. Such a sentence here would also avoid unwanted sentencing disparities taking into account the three months sentence Judge Abrams gave a flight attendant defendant who took considerably more money and had higher advisory guidelines. While we expect that the Government will advocate for a three-month sentence in order to promote "general deterrence" for other flight attendants who may be tempted to engage in similar conduct, we note that Judge Buchwald considered this argument and expressly found that a jail sentence was not needed for deterrent effect. (*See United States v. Pujols*, 24 Cr. 442 (NRB) Sent. Tr. at 10-13 (finding that incarcerating the defendant would not create general deterrence and a better method would be to subject flight attendants to more screening).)

We respectfully submit that Emmanuel, who is remorseful and unlikely to re-offend, should be given the chance to continue to prove himself to the Court while on supervised release with special conditions that the Court finds appropriate. This way, he can keep working and be there for his family, who are prepared to surround him with their love and unwavering support as he lives a law-abiding life.

Respectfully submitted,

*Sarah M. Sacks*

6

Emmanuel Torres



February 18, 2025

The Honorable Colleen McMahon
United States Southern District Court
500 Pearl Street
New York, NY 10007

Dear Judge McMahon,

I am writing to respectfully request your consideration for a lenient sentence in 24
Cr.474 (CM)], as this represents my first-ever criminal offense. I deeply regret my
actions that led to this charge and fully accept responsibility for my mistake.

I understand the seriousness of the charges against me, but I firmly believe that a
sentence with jail time would not serve the best interests of justice in this
situation. Throughout my life, I have maintained a positive record as a responsible
family member to my parents and my entire family and friends, I always have been
employed with no problem in the work force or society. I know I'm not perfect and
I am remorseful of my actions and how it has affected loved one around me. The
bad judgment and conduct in this case do not reflect my true character or values.

I describe my upbringing as loving, joyful and humble with a Christian/Catholic
background. My parents have always been my idols and have always wanted the
best for their children. Unfortunately, my family suffered a tragedy in September of
1991 with the sudden passing of my sister. She was 13 years old. She died from an

aneurysm on her first day of school. The sudden death brought a shock to my entire family. I was only one years old when she passed, but I did feel the loss. Without notice I became selectively mute.  My parents but mostly my mother endured the struggle of being a mother to my brother and also having to take me to therapists to help with my speech and trauma. It wasn't until I was 7 years old, I started to speak. Although I faced many challenges in school with being bullied and teachers trying to push the ESL program to my parents as if that would be helpful, but my mother being my advocate, wanted me to have a normal childhood and have no record of ESL as part of my school record. I did have to work harder than the other classmates in school, to achieve merits or even comprehend the material but I always did my best and always was awarded with honors and over achievement awards. I'm so thankful in so many ways my parents never gave up on me. When I was teenager, my sexual preference was also was challenging. Coming from a religious family, it was something that would be considered as intolerable. It hit hard at home, but eventually with time and by continuing to be a good student, respectful and dedicated to my studies, I graduated from all honors in High School. I got admitted to Queensborough College for Nursing. I started my studies but the waitlist to start the Nursing program was 2 years at the time, in which I was blessed with an opportunity to get my foot in the airline industry. As a little kid, I always was fascinated with the overall airport experience, from start to finish. I always wanted to be a flight attendant, but felt it was such a far fetch dream that I wouldn't achieve. That's until of January 2014, where dreams do come true. I became a flight attendant for Delta Air Lines. By that time, I had already 3 years in the airline industry and I focused on making a career out this.

In the early start of 2016, I met Jarol Fabio whom I had a relationship until 2021.



I understand now that my actions were wrong, and I allowed myself to jeopardize everything I stood for and work so hard for be ruined. For which, I am sincerely remorseful that I let my family but most importantly my mother down. My mother passed away in August 2019 from a massive heart attack. Another sudden death, another loss to my family. Being so, everyone depended on me emotionally. To be the anchor and glue just how my mother was. But I stood by my brother and father side, since they are all I have left of my mother's legacy.

In 2023, after I decided to move back home after being in a romantic relationship, which I can say that person financially abused me. They had no consideration to my loss of my mother or my good person. It got so bad I had to work 3 years while being a flight attendant to be able to cover the expenses of mine and his. I also had to manage to be a supportive member to my father and brother since we were mourning my mother's death. It was a difficult time overall.  I decided to move

back home with my father to focus on the important things in life which is, family. I realized that I was running away from my pain from losing my mother. I wanted to show up for my father because he sacrificed just as my mother did, to love and support my brother and I.

Since my arrest, I have taken proactive steps to address the underlying issues that contributed to my behavior, including talking to people who are in my support system to know how I'm doing, also I have but myself back into the workforce trying to contribute to my personal growth and be responsible to being a handworker. I'm currently employed as a store Manager at a storage facility, which I'm also going to start training to become a general manager. I show resilience and passion to everything I approach.

I am fully committed to making amends for my actions and ensuring that this never happens again. I am confident that with the opportunity to learn from this experience, I can continue to be a productive member of society.

Therefore, I humbly ask the court to consider a sentence that focuses on rehabilitation and restorative justice.

Thank you for your time and consideration.

Sincerely,

Emmanuel Torres

Jessica Infante



February 18, 2025

The Honorable Colleen McMahon
United States Southern District Court
500 Pearl Street
New York, NY 10007

RE: Character Reference for Emmanuel Torres

Dear Judge McMahon,

My name is Jessica Infante, Godmother to Emmanuel Torres.  I am
currently a program director at a senior center in Manhattan. I have
known Emmanuel Torres since he was 9 years old when I began dating
his older brother. I have had the pleasure of watching him grow as a kid
into the beautiful adult he is now. Although I was surprised about this
recent case, I am writing this letter to speak to the goodness of his
character. As well as respectfully ask for the court to show some
leniency and consideration in granting him probation or community
service in this case.

Emmanuel has always been a reliable person who is dedicated to his
family and friends. For example in September of 2018, my apartment
burned down and my son (his nephew) who was 14 at the time, and I
were left homeless and with nothing.  For a year, Emmanuel and his
parents made sure we had a roof above our heads and home cooked
meals. Emmanuel would often care for us and make sure we felt at home
and like we did not miss anything. He and his parents did not ask for
anything in return. Once my apartment was ready to be moved back into

and I needed to transition back home, Emmanuel lost his mother.
Through his devastating pain, he pushed through and was able to help
me with my move and settling in. He made sure that both his nephew
and I were comfortable. Emmanuel has always been of great support
during difficult times. He is a caring individual who puts others before
himself.

The fact that I have known Emmanuel for over 25 years, I have
witnessed his resilience during difficult situations.



Emmanuel is human and like all of us, makes mistakes. Emmanuel
though is the type of person who learns from his mistakes. He takes
responsibility for his actions and makes a commitment to better himself.
For example, due to this recent case, he lost his dream job but still he
moved forward despite the hardship and secured employment elsewhere.
He is determined to come out of this a better person.

I understand the seriousness of this case but I truly believe Emmanuel is
deeply sorry for his actions and has learned a hard lesson from this
experience. I hope the court takes into consideration my letter at the time
of sentencing. Emmanuel truly is a kind and caring individual. He is a
hard worker and a person you can rely on. Please allow him the chance
to make amends and continue his journey on self-improvement.

Thank you for considering my perspective. If you need any further information, please do not hesitate to contact me.

Sincerely,

Jessica Infante

Honorable Judge McMahon

United States District Judge

Southern District Judge

500 Pear Street

New York 10007


Dear Judge McMahon,

   I'm writing this letter to express a few words about my brother, Emmanuel Torres. To begin, I have to say I am still in shock that my brother in this situation he finds himself today. Anyone that knows Emmanuel at any level, I am certain is in disbelief. I understand the gravity of the case against him and serious consequences that come with it, but as his older brother I want to give an understanding of the good person I know my brother to be.

   Our parents were great examples to us growing up about what a hard working united family should be. We were raised in a loving and nurturing environment. We were also raised to be upstanding citizens, which is why I

ask of you to look behind his misguided decisions that lead him to this state of affairs.

After the passing of our mother a few years ago, my brother had a hard time processing and dealing with  it. We all did, it was a very difficult time, and still continues to be. However he has fought the pain and kept our mothers spirit alive for my father and I, in times of holidays and gathering. We have become closer because of this, we only have each other left in our immediate family.

This current situation has been another testing time for us as a family. However I have seen my brother take great strides in trying to pick himself and rebuild his life in a positive way. I respectfully ask that you consider the person he is beyond his mistake. With our support, I know he can keep moving forward and make a productive contribution to society.

Thank you for taking the time to read this and for your consideration.

Sincerely,

Jose M Torres

Honorable Colleen McMahon

United States district Judge

Southern District Judge United States Courthouses

500 Pearl Street, New York, NY 10007

Dear Judge McMahon,

I am writing to you as the first cousin of Emmanuel Torres, who, due to our kinship, has always been in my life, so I can affirm with certainty his integrity, exceptional abilities and his positive contribution both to the family and to society.

I can identify Emmanuel Torres as honest, since he was a child raised with many values and always on the path of God, values and teachings that he demonstrated with his behavior at school, since he was an honorary student and without any type of problems in the educational institution, which always boasted of Emmanuel as a disciplined and hard-working child. Emmanuel Torres since he was entering what we know as adolescence always said that he was going to work with airplanes it was his dream, a dream for which with great skill, responsibility and discipline he worked and educated himself to achieve this being an example of when you want you can, thus achieving his dream of belonging to the world of aircraft, he started in small positions in which he worked with a lot of discipline, respect and responsibility qualities that led them to continue growing in the field until he got to where he really wanted to be. I had the opportunity to meet several of his coworkers who only had excellent words to say about Emmanuel, something that proved to me once again the integrity with which Emmanuel was raised, Emmanuel Torres in the family environment has always been a very important pillar, he has always liked to be surrounded by his family, to support his family and above all he has always been a very loving young man with the same, an example of this is that five years ago we had a great loss which was that of his mother, Marfi Torres, and just at that time my mother and I came to live in this country and despite the pain and horrible moment he was going through, gave us his support he was there for us from the moment we boarded the plane, he dedicated himself every day to helping us in the search for work, he worried that we did not lack absolutely anything, we arrived in this country in winter time and thanks to Emmanuel we had the necessary instruments to be able to be prepared and not go through any type of bad weather, or inconvenience, he always supported us and guided us on the best path so that things would be less hard for us in this new experience that we were living mostly from our great loss, I personally can say that Emmanuel has always been a great example to follow for me, as I mentioned before I learned from him that I can be and get where I want as long as I worked with discipline and effort, I learned that the family and especially the mother comes

above everything regardless of differences, because it is another thing that I must say about him, Emmanuel as a son was the best, for his mother there was never a NO, his mother only had to say what she needed and he was always there for her, Emmanuel has always been a human being attached to helping and collaborating when he is needed, an example of this is that in special moments for me in which I needed an older brother he has always been there for me, advising me and trying to make me see the positive side of life, in short I can summarize that Emmanuel Torres in my eyes is an example of overcoming and resilience, since despite that dark moment that enveloped us almost six years ago, he has continued forward, working and supporting us, his family regardless of time, place or time. If I were born again I would definitely want him to be in my life again always.


Thank you,

Anais Menicucci Capellán

Honorable Colleen McMahon

United States district Judge

Southern District Judge United States Courthouses

500 Pean Street, New York, NY 10007

Estimado Juez McMahon,

Me dirijo a usted en calidad de prima hermana de Emmanuel Torres, quien por nuestro parentesco a estado en mi vida desde siempre por lo que puedo afirmar con certeza su integridad, habilidades excepcionales y su contribución positiva tanto en la familia como en la sociedad.

Puedo identificar a Emmanuel Torres como integro, ya que fue un niño criado con muchos valores y siempre en el camino de Dios, valores y enseñanzas que él demostraba con su comportamiento en la escuela, ya que fue un estudiante honorífico y sin ningún tipo de problemas en la institución educativa, misma que siempre alardeaba de Emmanuel como un niño disciplinado y aplicado. Emmanuel Torres desde que fue entrando a lo que conocemos como adolescencia siempre decía que él iba a trabajar con aviones era su sueño, sueño por el cual con mucha habilidad, responsabilidad y disciplina trabajó y se educó para lograr con esto siendo un ejemplo de cuando se quiere se puede, logrando así su sueño de pertenecer al mundo de las aeronaves, empezó en puestos pequeños en los cuales trabajo con mucha disciplina, respeto y responsabilidad cualidades que los llevaron a seguir creciendo en el ámbito hasta lograr llegar donde realmente él quería estar, tuve la oportunidad de conocer varios compañeros de su trabajo los cuales solo tenían excelentes palabras que decir de Emmanuel, algo que me comprobaba una vez más la integridad con la cual Emmanuel fue criado, Emmanuel Torres en el ambiente familiar siempre ha sido un pilar muy importante, siempre le ha gustado estar rodeado de su familia, apoyar a su familia y sobre todo siempre ha sido un joven muy amoroso con la misma, un ejemplo de esto es que hace cinco años tuvimos una gran pérdida que fue la de su madre Marfi Torres y justo en ese momento yo y mi madre llegamos a vivir a este país y él a pesar del dolor y horrible momento por el cual estaba pasando, nos dio su apoyo estuvo para nosotras desde el momento en que abordamos el avión,

se dedicó cada día a ayudarnos en la búsqueda de trabajo, se preocupó porque no nos faltara absolutamente nada, nosotras llegamos a este país en tiempo de invierno y gracias a Emmanuel nosotras tuvimos los instrumentos necesarios para poder estar preparadas y no pasar ningún tipo mal tiempo, ni inconvenientes siempre nos apoyó y nos guió por el mejor camino para que las cosas fueran menos fuertes para nosotras en esta nueva experiencia que estábamos viviendo sobre todo de nuestra gran pérdida, yo en lo personal puedo decir que Emmanuel siempre para mí ha sido un gran ejemplo a seguir, como mencioné anteriormente de él aprendí a que puedo ser y llegar donde yo quiera siempre cuando trabajé con disciplina y esfuerzo, aprendí que la familia y sobretodo la madre va por enzima de todo sin importar las diferencias, porque es otra cosa que debo de decir de él, Emmanuel como hijo fue lo mejor, para su madre nunca hubo un NO, su madre solo tenía que decir que necesitaba y ahí estaba él para ella siempre, Emmanuel siempre ha sido un ser humano apegado a ayudar y colaborar cuando se le necesita un ejemplo de esto es que en momentos especiales para mí en los cuales necesitaba de un hermano mayor él siempre ha estado para mí, aconsejándome y tratando de hacerme ver el lado positivo de la vida, en resumen yo puedo resumir que Emmanuel Torres ante mis ojos es ejemplo de superación y resiliencia, ya que a pesar de aquel momento tan oscuro que nos arropo hace casi seis años atrás él ha seguido hacia delante, trabajando y apoyándonos a nosotros su familia sin importar hora, lugar o tiempo. Si yo volviera a nacer definitivamente volvería a querer que él esté en mi vida siempre.

Gracias,

Anais Menicucci Capellán

**Honorable Judge McMahon**
**United States District Judge**
Southern District Judge
500 Pear Street
New York 10007

My name is Jose Torres, Emmanuel Torres' father. I come from a humble family, raised with Christian values, social morals, which my wife, now deceased, followed with our son. Without having social school complaints with good behavior, always applied serving those most in need. A student graduated with honors and cooperative with teachers. Over time, his mother and I realized his gender preference, which was very hard for us, but we overcame it and gave all the support to our son, who then with dialogue and behavior at school graduating with honors, participating in school and community events, we overcame it. And we were very proud. His mother meant the world to him, not only was it a mother and son relationship but they were best friends. When his mother passed away he suffered a lot, I also lost my wife who I was with for 45 years. She was the main one, the guide for me and our children and our family to always be united, to be kind, to be humble and to be good people in this world.

I never got involved in Emmanuel's romantic life, I always respected him and gave him advice to always take care of himself. The last relationship that Emmanuel had was with a young man named Alex. In which Emmanuel decided to move from New York to Florida with Alex. Over time Emmanuel was showing a lot of financial difficulties. Emmanuel explained to me that Alex was not working and also had the responsibility of the rent, the household expenses and also the car payments. Sometimes I had to give him support and lend Emmanuel money so that he could get out of that problem a little. The point came in the relationship, Emmanuel was working three jobs and it hurt me a lot to see my son go through a lot because of a person who did not value him or respect him for everything he was doing and not putting in his part. It was a relationship that did not have the stability that he was looking for, ending that relationship with maturity and with my support, which Emmanuel came back to live with me and he has been my emotional and unconditional support for the last six years, so I depend on him to continue day to day taking care of my responsibilities. Since I am 66 years old, as a father I hope that his life path is taken into account.

Thank you,

Jose Torres

**Honorable Judge McMahon**
**United States District Judge**
Southern District Judge
500 Pear Street
New York 10007


Dear Judge McMahon,

Mi nombre es José Torres, Padre de Emmanuel Torres. Vengo de una familia

humilde, formada con valores cristianos, morales sociales, el cual mi esposa hoy

fallecida dimos seguimiento a nuestro hijo. Sin tener quejas escolares sociales con

buen comportamiento aplicado siempre sirviendo al más necesitado. Un

estudiante graduado con honores y cooperador con los maestros. A través del

tiempo su madre y yo nos dimos cuenta de su preferencia de género el cual fue

muy duro para nosotros pero lo superamos y le dimos todo el apoyo a nuestro

hijo que luego con el diálogo y el comportamiento en la escuela graduándose con

honores, participando en eventos escolares y comunitarios lo superamos. Y

estábamos muy orgullos. Su madre era el mundo para él, no solo era un relación

de madre y hijo pero eran mejores amigos. Al fallecer su madre sufrió mucho,

también perdí a mi esposa en cuál yo estuve junto con ella por 45 años. Ella fue la

principal, el guía mío y de nuestros hijos y de nuestra familia para estar unidos

siempre, ser amable, ser humilde y ser buena gente en este mundo.

Yo nunca me metí en la vida romántica de Emmanuel yo siempre lo respetaba y le

daba consejo que se cuidara siempre. La última relación que Emmanuel tuvo eras

con un joven llamado Alex. En cuál Emmanuel decidió mudarse de Nueva York

hacia Florida con Alex. Con el tiempo Emmanuel estaba demostrando mucho

dificultades financiaría. Emmanuel me explicaba que Alex no estaba trabajando y

también tenía la responsabilidad de la renta de casa, los gastos de casa y también

pagos de carro. A veces yo tenía que darle el apoyo y prestarle dinero an

Emmanuel para que pudiera salir un poco de ese problema. Llegó el en punto de

la relación, Emmanuel estaba trabajando tres trabajos y me dolía mucho ver mi

hijo pasar por mucho por una persona que no le daba ningún valor o lo respetaba

por todo lo que él estaba haciendo y no poniendo de su parte. Fue una relación

que no tuvo la estabilidad que él buscaba terminando esa relación con madurez y

apoyado de mi, cual Emmanuel regresó a vivir conmigo y él ha sido mi apoyo

emocionalmente e incondicionalmente en los últimos seis años por lo que

dependo de él para seguir el día a día ocupándose de mis responsabilidades. Ya

que tengo 66 años de edad. Cómo padre espero que se tome en cuenta su

trayectoria de vida.

Gracias,


Jose Torres

**Andreanellis Paredes**



February 12, 2025

The Honorable Colleen McMahon
United States Southern District Court
500 Pearl Street
New York, NY 10007

RE: Character Reference for Emmanuel Torres

Dear Judge McMahon,

My name is Andreanellis Paredes, and I have had the privilege of knowing Emmanuel Torres for fifteen (15) years as a close friend. I am writing this letter to speak to his strong character and to respectfully ask for your consideration in granting him probation or community service in this case.

Emmanuel has always been a hardworking, family-oriented, and responsible person. He is the kind of person who puts others before himself, always willing to help those in need. I have personally witnessed his generosity in many ways, including how he has selflessly opened his home to family members arriving in this country with nothing, ensuring they had a safe place to stay and a foundation to build their new lives.

Beyond his commitment to family, Emmanuel is also the type of friend who drops everything at a moment's notice when someone is going through hardship. I have seen him stand by friends experiencing the loss of a loved one, offering unwavering emotional support and doing whatever is needed—whether it's helping with arrangements, simply being present, or offering a shoulder to lean on. His kindness and selflessness in these moments speak volumes about his true nature.

One of the most admirable things about Emmanuel is his resilience. Despite facing the devastating loss of his dream job, he did not let it define him or break his spirit. Instead of giving up, he found another way to secure employment, showing his determination and refusal to let setbacks dictate his future. This perseverance is just another example of the strength of his character and his commitment to bettering himself.

I fully understand the gravity of the situation before the court, and I know that Emmanuel does as well. He deeply regrets his actions and is committed to making things right. I truly believe that he is not defined by this mistake but rather by the many acts of kindness and responsibility he has shown throughout his life. Given the opportunity, I am confident he will

use this experience as a lesson to better himself and continue being a positive influence on those around him.

I respectfully ask that you take into account Emmanuel's character and his contributions to his family and community when making your decision. Probation or community service would allow him to continue supporting those who rely on him while also giving him the chance to make amends.

Thank you for your time and consideration. If you need any further information, please do not hesitate to contact me.

Sincerely,

Andreanellis Paredes

Elizabeth Quirion



The Honorable Colleen McMahon
United State district
United States court house
500 pearl street
New York ,NY
10007

Dear Judge McMahon,

I am writing this letter on behalf of my cousin, Emmanuel Torres, who is
currently facing sentencing in your court. My hope is that you will take into
account the person he truly is beyond the circumstances of this case.
Emmanuel is not a bad person; he is a kindhearted, family-oriented man who
has always shown love and dedication to those around him.

I have known Emmanuel my entire life, and I can say with certainty that he is
someone who values family, loyalty, and hard work. He has always been
there for his loved ones, offering support in times of need. Whether ifs
helping family members through difficult times or simply being a positive
presence, Emmanuels heart is full of goodness. His actions have always
reflected his deep love for his family, and I truly believe that he has the
potential to be a positive and contributing member of society if given the
opportunity.

I do not seek to diminish the seriousness of the charges against him, nor do I
wish to undermine the legal process. However, I respectfully ask for your
leniency, compassion and consideration in his sentencing. Emmanuel is not
defined by his mistakes, and I believe that with the right guidance and

opportunity, he can learn from this experience and work towards a better future a chance to rehabilitate and contribute positively to society.

I kindly ask that you consider Emmanuel's good character, his love for his family, and his potential for redemption as you make your decision. Thank you for your time and for considering my words.

Sincerely

Elizabeth Quirion

Dario Torres



February 14, 2025

Honorable Colleen McMahon
United States District Judge
Southern District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Honorable Judge McMahon:

I hope this note finds you and your family well.

I am writing to inform you that my nephew, Emmanuel Torres, will appear before you on Wednesday, March 5, 2025, to address a pending matter. I had hoped to attend the meeting on that date to discuss his character and family upbringing with you. However, due to my daughter's surgery scheduled for that day, I regret that I will be unable to accompany him. Emmanuel comes from a law-abiding family and has always been hardworking. He graduated from High School and has been working ever since. He has never been in trouble with the law before. He has always been very respectful to the law and his entire family. I understand that he has been through some emotional issues after his mom passed away from a sudden heart attack, but he has never gotten in trouble with the law before.

Our family immigrated to the USA in the late 1970's and has always worked hard to serve the people of the United States in any capacity possible. I recently retired from the City of New York after working for 31 years in various city agencies and some of Emmanuel's cousins are currently working in the various law enforcement agencies such as US Marshalls Services, US Marines Corp New York City Police and Correction Departments. Emmanuel comes from a good family and poses no threat to society. I understand that he made a mistake, but I hope that you can find in your heart to be lenient to him and allow him to continue to be a productive member of our society.

Very sincerely yours,

Dario Torres

Honorable Colleen McMahon
United States District Court Judge
Southern District Judge
United States Courthouse

500 Pearl Street
New York, NY 10007

Dear Judge McMahon,

I Jaris Ortiz hereby certify that I was Emmanuel Torres' landlord for three consecutive years. He was my tenant from July 2018 to August 2021. Emmanuel was the first tenant to occupy one of my newly renovated apartments at 59-19 59th Dr. Maspeth NY 11378.

He was the first person to see the unit and I instantly knew that he would be the one I would rent it to. The joy and excitement on his face was enough for me to make that decision.

I was honored to meet his late mother, may she rest in peace. His relationship with his mother and the way they interacted while they looked at the unit together was what confirmed my decision to rent it to him. It gave me an insight of how family oriented he is and how important it was for him to get his mother's approval before taking the unit. She was so proud of him as he gained independence by living on his own.

Emmanuel has an essence of purity, innocence and honesty that is hard to find in a person. He quickly became an extension of our family as we shared good times and family gatherings. We got to know him really well and saw him as another one of our own.

Emmanuel is a beautiful person and soul. He was always willing and able to help in any way he can. He kept his unit clean, decorated and organized. Immaculate!

Emmanuel was the only tenant that felt like family. Even to the point that we would exchange Christmas gifts. Emmanuel is a friendly, caring, generous and thoughtful person.

I wholeheartedly wish Emmanuel the best in life because a person with his character, qualities and personality is what they deserve. We hold him dearly in our hearts.

Sincerely,

X

Jaris Ortiz

**Reyes Family**



02/12/2025

**Honorable Judge McMahon**
United States District Judge
Southern District Judge
500 Pear Street
New York 10007


Dear Judge McMahon,

On behalf of the Reyes family, I am writing to provide a character reference for Emmanuel Torres whom I've known since I was child and, in my capacity, as a family member. Throughout my life I have had the opportunity discuss his character and how much he has helped us. Emmanuel has always had a genuine and great heart. Since I've known he was always a responsible and reliable person and shown kindness to everyone. He put others before himself and the first to offer help when in need. We grew up together and went to the same elementary and high school and we always knew we had someone looking out for us if anything was needed. He was the first to offer me help while I was looking for work as new college graduate and now I currently have almost six years in prestigious New York hospital. Despite many aversions in life, he never changed his kindness and continue to be there for his family and friends. I understand the seriousness of the matter before the court, and I do not wish to excuse any actions that have led to this situation. However, I believe that Emmanuel Torres is genuinely remorseful and committed to making positive changes. We as a family respectfully ask that you consider Emmanuel character, past contributions, and know he has family and friends that care very much about him when making your decision. I appreciate your time and consideration.

Best regards,

Reyes Family

February 12, 2025

Dear Honorable Judge McMahon,

I am writing to you in my capacity as a family member, to advocate for Emmanuel Torres, whom I have known since we were kids. It is an honor to vouch for his character and integrity, I have spent time with him to know this.

In my experience Emmanuel has always shown a strong work ethic, and commitment to his family, he is very compassionate, focused and ready to learn. He prides himself on giving his very best. I have no doubt he will continue to have a positive influence on those around him.

He is a wonderful uncle who has always been around for his nephew and has helped him become the young man he is today. He has helped me countless times to babysit for my son. He shows up when it matters. What he is experiencing currently is out of his character, he comes from a family of values and law enforcement.  He lost his mother, and I know that going through this difficult time has not been easy for him, he was very close to her, and she had raised him to be a respectful, honorable young man. Please consider this letter when determining the case. I'm pretty sure he has learned from this experience and will make every effort to avoid situations in the future. I believe that Emmanuel is genuinely remorseful for his actions.

Sincerely

Johanna Torres (cousin) 347-302-3172

Victor Torres (uncle) 646- 642-5095

Gladys Torres (aunt) 347-866-3175

Jorge Torres (cousin) 718-314-5703

Rosangel Torres (cousin) 347-693-7857

Julain Torres (cousin) 917-476-5044

Freddy Torres (uncle) 786-853-1743

Yomaira Kelly (cousin) 646-673-4434

Yeny Gomez (cousin) 347-693-8961

Reynaldo Rijo (friend) 646-712-0123

Alexandra Inoa (friend) 917-841-4744

Freddy Ramirez (friend) 347-693-7946

Cesar Ortiz (cousin) 786-269-1196

Honorable: Colleen McMahon

United States District Judge.

Southern District Judge United States

Courthouse, 500 Pearl Street, New York, 10007.


Distinguished Judge McMahon:

My name is Hermenegildo Antonio Aybar Álvarez, I am the uncle of Emmanuel Torres, subject to a process before your court, I am writing to you to tell you that I have always observed correct behavior in my nephew, he had never been involved in any act that put him against the law, he is a very respectful person, raised in a family with many values and love, and with dignified and responsible behavior.

For this reason, I ask you to take this information into account when deciding, especially as I am a young man who finds himself in a trial for the first time, I ask for mercy for my nephew.


With feelings of consideration and respect,

Hermenegildo Ant. Aybar.

Honorable: **Colleen McMahon**
**United States District Judge.**

Soutuem District Judge United States
Courthouses, 500 Pean Street, New York, 10007.

Distinguido Juez **McMahon**:


Mi nombre es **Hermenegildo Antonio Aybar Álvarez**, soy el Tío de **Emmanuel Torres**, sometido a un proceso ante su tribunal, me dirigido a usted para decirle que en mi sobrino siempre he observado un comportamiento correcto, nunca se había visto involucrado en ningún hecho que lo pusiera en contra de la ley, es una persona muy respetuosa, criado en una familia con muchos valores y amor, y de comportamiento digno y responsable.

En esa virtud ruego tomar en cuenta estas informaciones al momento de decidir sobre todo por ser un joven que se ve en un proceso por primera vez, le pido clemencia para mi sobrino.


Con sentimientos de consideración y respeto,


**Hermenegildo Ant. Aybar.**

Honorable: Colleen McMahon

United States District Judge.

Southern District Judge United States

Courthouse, 500 Pearl Street, New York, 10007.


Distinguished Judge McMahon:

My name is Magali Capellán Álvarez, I am the aunt of Emmanuel Torres, who is being prosecuted before your court. I would like to address you to tell you that my nephew has always observed good behavior. He had never been involved in any event that put him in conflict with the law. It is possible that the loss of his mother has led him to confusion, but I can assure you that this young man comes from a stable place where values are instilled in him, in addition to carrying out dignified and responsible behavior.

For this reason, I ask you to take this information into account when deciding, especially as he is a young man who finds himself in a trial for the first time, I ask for mercy for my nephew.


With feelings of consideration and respect,

Magali Capellán Álvarez

Honorable: **Colleen McMahon**
United States District Judge.

Soutuem District Judge United States
Courthouses, 500 Pean Street, New York, 10007.

Distinguido Juez McMahon:

Mi nombre es **Magali Capellán Álvarez** soy la Tía de **Emmanuel Torres**, sometido a proceso ante su tribunal, me permito dirigirme a usted para decirle que mi sobrino siempre ha observado un comportamiento correcto, nunca se había visto involucrado en ningún hecho que lo pusiera en conflicto con la ley, es posible que la perdida de su madre lo haya llevado a confusión, pero le puedo asegurar que este joven proviene de un lugar estable donde se le inculcan valores, además a llevar comportamiento digno y responsable.

En esa virtud ruego tomar en cuenta estas informaciones al momento de decidir sobre todo por ser un joven que se ve en un proceso por primera vez, le pido clemencia para mi sobrino.

Con sentimientos de consideración y respeto,

**Magali  Capellán Álvarez**

Honorable: Colleen McMahon

United States District Judge.

Southern District Judge United States

Courthouse, 500 Pearl Street, New York, 10007


Distinguished Judge McMahon:

My name is Mercedes Tiburcio, I am the aunt-in-law of Emmanuel Torres, I have known him for approximately 20 years and I know that he is a person who was raised with many values and respect for others, qualities that I saw in him over the years due to his behavior, a well-focused young man who fought to improve himself by studying to obtain a good job, with a lot of responsibility and discipline, in addition a young man always willing to help his family, in my case I can say that when I arrived in this country he was the person who opened the door of his family's home to us, my husband and son, he helped us familiarize ourselves in the new environment, to look for work, school for my son and all the necessary documentation required, taking his time to dedicate it to us. And I can say about him that he is a good person.


For these reasons and many more, I ask you to take this information into account when deciding, especially as a young man who finds himself in a trial for the first time, I ask for mercy.


Grateful for your attention to this,

Mercedes Tiburcio

Honorable: **Colleen McMahon**
United States District Judge.

Soutuem District Judge United States
Courthouses, 500 Pean Street, New York, 10007.

Distinguido Juez McMahon:

Mi nombre es **Mercedes Tiburcio**, soy Tía Política de **Emmanuel Torres**, llevo aproximadamente 20 año conociéndolo y me consta que es una persona que fue criado con muchos valores y respeto hacia las demás, cualidades que fui viendo de él a través de los años por su comportamiento, un joven bien aplicado que luchaba por superarse estudiando para obtener un buen trabajo, con mucha responsabilidad y diciplina, además un joven siempre dispuesto ayudar a su familia, en mi caso puedo contar que cuando llegue a este país él fue la persona que nos abrió la puerta de su casa a mi esposo e hijo, nos ayudó a orientarnos en el nuevo entorno, a buscar trabajo, escuela para mi hijo y todo lo necesario de documentación requerida, sacando de su tiempo para dedicárnoslo a nosotros. Y de él puedo decir que es una persona de bien.

Por esas razones y muchas más le ruego tomar en cuenta estas informaciones al momento de decidir sobre todo por ser un joven que se ve en un proceso por primera vez, le pido clemencia.

Agradecida por la atención a la presente,

**Mercedes Tiburcio**

**Marianela Astacio**



February 18, 2025

The Honorable Colleen McMahon
United States Southern District Court
500 Pearl Street
New York, NY 10007

Subject: Character Reference Letter for Emmanuel Torres

Honorable Judge McMahon,

I am writing to you with the purpose of providing a character reference for Emmanuel Torres, whom I have known for 14 years as the best friend of my daughter Andreanellis Paredes. During this time, I have had the opportunity to learn about his integrity, honesty, and values as a person.

Emmanuel is a responsible, hard-working person committed to his family and friends. He has always demonstrated a high sense of ethics and respect for others. In my experience, I have seen how Emmanuel has acted honestly and fairly in various situations, which gives me the confidence to say that he is someone of good character.

Emmanuel is an extremely attentive and helpful person. He is always willing to help others, providing exceptional service to those in need, whether in his work, family or community environment. His empathy and willingness to collaborate make him a highly appreciated and respected person.

Something that has always caught my attention is that, even when he is a visitor, Emmanuel never fails to be considerate and attentive to those around him. Although he has no obligation to do so, he is always willing to help with whatever is necessary, ensuring that everyone around him feels comfortable and cared for. This level of dedication and kindness is a clear example of his character and values.

I understand the importance of this process and the role your honor plays in making fair decisions. I ask that you consider my testimony about Emmanuel's personality and behavior when evaluating his case.

If you require additional information, please do not hesitate to contact me. I appreciate your time and consideration.

Sincerely,

Marianela Astacio

**Marianela Astacio**



Febrero 18, 2025

The Honorable Colleen McMahon
United States Southern District Court
500 Pearl Street
New York, NY 10007

Asunto: Carta de Referencia de Carácter para Emmanuel Torres

Honorable Juez McMahon,

Me dirijo a usted con el propósito de brindar una referencia de carácter para Emmanuel Torres, a quien conozco desde hace 14 años en calidad de ser el mejor amigo de mi hija Andreanellis Paredes. Durante este tiempo, he tenido la oportunidad de conocer su integridad, honestidad y valores como persona.

Emmanuel es una persona responsable, trabajadora y comprometida con su familia y amistades. Siempre ha demostrado un alto sentido de ética y respeto por los demás. En mi experiencia, he visto cómo Emmanuel ha actuado de manera honesta y justa en diversas situaciones, lo que me da la confianza para afirmar que es alguien de buen carácter.

Emmanuel es una persona sumamente atenta y servicial. Siempre está dispuesto a ayudar a los demás, brindando un servicio excepcional a quienes lo necesitan, ya sea en su entorno laboral, familiar o en la comunidad. Su empatía y disposición para colaborar hacen que sea una persona muy apreciada y respetada.

Algo que siempre me ha llamado la atención es que, incluso cuando es un visitante, Emmanuel nunca deja de ser considerado y atento con quienes lo rodean. A pesar de no tener la obligación de hacerlo, siempre se muestra dispuesto a ayudar en lo que sea necesario, asegurándose de que todos a su alrededor se sientan cómodos y atendidos. Este nivel de dedicación y amabilidad es una muestra clara de su carácter y valores.

Entiendo la importancia de este proceso y el papel que su señoría desempeña en la toma de decisiones justas. Le ruego que considere mi testimonio sobre la personalidad y el comportamiento de Emmanuel al momento de evaluar su caso.

Si requiere información adicional, no dude en contactarme. Aprecio su tiempo y consideración.

Atentamente,

*Marianela Astacio*

Marianela Astacio

P1uWpujS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          24 Cr. 442 (NRB)

 5   SARAH VALERIO PUJOLS,

 6              Defendant.
                                            Sentence
 7   ------------------------------x

 8                                          New York, N.Y.
                                            January 30, 2025
 9                                          2:00 p.m.

10   Before:

11
                        HON. NAOMI REICE BUCHWALD,
12
                                            District Judge
13
                              APPEARANCES
14
     DANIELLE R. SASSOON
15        United States Attorney for the
          Southern District of New York
16   BY:  BENJAMIN A. GIANFORTI
          Assistant United States Attorney
17
     TAMARA L. GIWA
18        Federal Defenders of New York, Inc.
          Attorney for Defendant
19   BY:  MARISA K. CABRERA
          Assistant Federal Defender
20
     Also Present:  Ashley Toribio, Paralegal
21

22

23

24

25
```

P1uWpujS

```
 1                (Case called; appearances noted)

 2                THE COURT:  Everyone may be seated.

 3                As it's clear everybody's aware, the purpose of

 4    today's proceeding is to determine the sentence for Ms. Pujols,

 5    given her plea of guilty.  So let me begin, as I always do, by

 6    making sure that I have all the documents that have been

 7    submitted in connection with the proceeding:

 8                First is the report from the probation department, the

 9    presentence investigation report.  It bears a revised date of

10    October 28 of 2024;

11                Next, there's the submission by Federal Defenders with

12    an impressive collection of letters from family and friends;

13    and

14                Finally, the government's submission, which was filed

15    on January 21 of this year.

16                I might have forgotten to say that the Federal

17    Defenders submission is dated January 9 of this year.

18                Let me confirm that both sides have received a copy of

19    the presentence investigation report.

20                MR. GIANFORTI:  Yes, your Honor.

21                MS. CABRERA:  Yes.

22                THE COURT:  Are there any objections to it?

23                Mr. Gianforti.

24                MR. GIANFORTI:  No.

25                THE COURT:  Ms. Cabrera.
```

P1uWpujS

| | |
|---|---|
| 1 | MS. CABRERA:  No, your Honor. |
| 2 | THE COURT:  Ms. Cabrera, have you had a chance to |
| 3 | review the presentence report with your client? |
| 4 | MS. CABRERA:  Yes, your Honor. |
| 5 | THE COURT:  Do you have any objections to it? |
| 6 | MS. CABRERA:  No, your Honor. |
| 7 | THE COURT:  Did you review with her the requested |
| 8 | special conditions of supervised release that were proposed by |
| 9 | the probation department? |
| 10 | MS. CABRERA:  Yes, your Honor. |
| 11 | THE COURT:  And did you have any objection to any of |
| 12 | them? |
| 13 | MS. CABRERA:  No, your Honor. |
| 14 | THE COURT:  All right. |
| 15 | Ms. Cabrera, I'm going to give you the floor. |
| 16 | MS. CABRERA:  May I move? |
| 17 | THE COURT:  Any place you want. |
| 18 | MS. CABRERA:  OK.  Thank you, Judge. |
| 19 | THE COURT:  Whatever's comfortable. |
| 20 | MS. CABRERA:  Thank you, your Honor. |
| 21 | A nonincarceratory sentence is appropriate here, we |
| 22 | believe, in this case under the circumstances. |
| 23 | Ms. Valerio is a nonviolent, zero-point offender, who |
| 24 | accepted an opportunity to carry money from a childhood friend |
| 25 | and deliver it to his family in the Dominican Republic for him. |

1    And she agreed to do this during a period in time that was one

2    of the most challenging times in her life, periods of her life,

3    when she was trying to conceive a child, which she had been

4    attempted to do for years.  The costs of these fertility

5    treatment were overwhelming for her.  The shame of being unable

6    to carry a child without medical intervention deeply

7    embarrassed her.  And it was against this backdrop that she

8    made this decision, and a wrong decision.  And it's a decision

9    she deeply regrets, but she fully acknowledges that it was her

10   decision alone.

11          Now, while Ms. Valerio's codefendant, Charlie

12   Hernandez, received a sentence of three months of

13   incarceration, we do not think that that is the appropriate

14   sentence here for Ms. Valerio.  And I do think that there are

15   actually, in fact, multiple factors that distinguish

16   Ms. Valerio from Charlie Hernandez that warrant a noncustodial

17   sentence.

18          First, the obvious, I think, is the fact that she does

19   have a young child, who's actually present today, that she's

20   the primary caretaker of.  Her family lives in Missouri, her

21   immediate family.  Most of the folks in here today are actually

22   friends, and I think there are two cousins here, but it's such

23   an amazing show of support for Ms. Valerio today.  But as all

24   of their letters have indicated, she is the primary caretaker

25   for their four-year-old son.

1          Her husband is incredibly worried as to how they'll

2     manage without her.  He's the primary breadwinner.  They are

3     unable to afford child care without Ms. Valerio being able to

4     stay at home with him.  And again, this isn't just simply a

5     sentiment expressed by her husband.  It's expressed in those 34

6     letters of support.

7          Second, she has a job awaiting her, depending on the

8     outcome of the case.

9          Now, during the pendency of this case, when she was

10    first arrested, Ms. Valerio was working as a home health aide

11    for her mother, who was quite ill.  In the midst of it, her

12    mother moved to Missouri, and so she was no longer working as

13    her health aide and kind of first got a taste of the challenges

14    associated with a criminal prosecution and eventually a

15    conviction in that the background checks started coming through

16    when she was applying for jobs.

17         And so despite these challenges, she was able to

18    secure something, through CVS, as a bilingual customer service

19    representative in October of 2024.  However, after the

20    background check, when they realized that this sentencing was

21    pending, they had asked her to delay her start date until

22    afterwards.

23         As of last week, on January 23 of 2025, she was still

24    contacted by CVS, asking for the status of the sentencing.  And

25    what that means, to us and I think the reasonable inference is

P1uWpujS

1     that if she does remain at liberty, it does seem as though

2     there's a job still waiting for her.  If she's detained, it's

3     unlikely that they're going to hold this position open for her

4     until she concludes her sentence, which would certainly be a

5     shame, because it was quite hard for her to find a job.

6          You know, as I mentioned, the impacts of a felony

7     conviction are already being felt by Ms. Valerio, and it's hard

8     to imagine that a three-month sentence or really any sentence

9     is worth the cost of the new employment, especially when

10    studies have shown time and time again that successful --

11    employment goes hand in hand with successful reintegration into

12    the community.

13         Now, a third point is that I think it's worth noting

14    that Mr. Hernandez seemingly had a different level of

15    involvement than Ms. Valerio, and he did face higher guidelines

16    than Ms. Valerio, which I think should also be considered when

17    fashioning a sentence here.

18         Mr. Hernandez's guideline sentence was based on

19    $120,000 versus Ms. Valerio's, I think, 61,000, and the

20    allegations were that he delivered half the money to

21    Ms. Valerio, which seemingly meant that he was -- it wasn't

22    just simply that he was carrying the money, but he was also

23    divvying it up to different people.  And I do think that's

24    worth considering here.

25         And it's also my understanding that Mr. Hernandez knew

1   definitively that these were the proceeds of drug money,

2   whereas, here, it's that Ms. Valerio should have known.  She

3   was never directly told by her childhood friend that these were

4   drug proceeds money.  And you know, I think that there is -- I

5   also think, lastly, that there's something to be said about

6   Ms. Valerio's motives here.

7          Her motives were incredibly different than

8   Mr. Hernandez's, and I do believe that warrants consideration

9   as well.  She did this to finance the exceedingly high costs of

10  her fertility treatments, treatments that her long-time friend

11  who asked her to do this had even, like, participated in

12  counseling her through and even was present in the waiting room

13  when she was getting her IUI procedures done.  He knew her

14  desperate circumstances and offered her an opportunity to ease

15  the financial burden of it.  Obviously, it's an opportunity

16  that she deeply regrets now, having to accept it now.

17          But unlike Hernandez, who the government described his

18  actions to be, quote, somewhat inexplicable from a financial

19  standpoint, end quote, Ms. Valerio was not acting out of a

20  place of greed or indifference but really of desperation, which

21  unfortunately blinded her here.  She's a good person.  There's

22  just no question of it.  The 34 letters of support, which is

23  the most that I've seen in my career here, I think, show you

24  how deeply loved she is by so many people.  And you just don't

25  get 34 letters of support without being a really good, stand-up

1    person.

2              THE COURT:  Having been around this courthouse

3    considerably longer than you, I would say that in a case of

4    this magnitude, this is the most letters I've ever seen.

5              MS. CABRERA:  And I think that's incredibly telling,

6    your Honor.

7              As Ms. Valerio will be the first to tell you, you

8    know, good people sometimes make the wrong choices, which is

9    certainly what's happened here.  And she's already certainly

10   feeling the consequences of that.

11             Jail is simply not necessary for Ms. Valerio, a first

12   time and zero-point offender.  She's been at liberty, living a

13   law-abiding life for nearly five years before being arrested

14   here.  She's been exceptionally compliant with the terms of her

15   pretrial release.  This experience, though, has really pulled

16   the rug out from under her, and while we understand the

17   seriousness of the offense and the conduct here, I think it's

18   clear that there's no doubt that a flight attendant would be

19   fully deterred from seeing the consequences that Ms. Valerio

20   has endured already.

21             She's lost her coveted, really coveted, job as a

22   flight attendant.  They're pretty hard to get.  She's faced

23   federal criminal prosecution.  She's faced incredible

24   challenges in finding a new job, and she's lived with the fear

25   of having to abandon her family and her child because of her

P1uWpujS

```
 1    own action.  And the reality is, as your Honor already knows,
 2    each defendant has to be treated individually and separately at
 3    their sentences.  And while a three-month sentence may have
 4    been deemed appropriate for Mr. Hernandez in balancing the
 5    3553(a) factors for his case, the same cannot be said for
 6    Ms. Valerio.
 7              A time-served sentence with a term of home
 8    incarceration is the appropriate sentence here and, along with
 9    all of the other collateral consequences here, will be
10    sufficient punishment and deterrence given the conduct in this
11    case.
12              Unless your Honor has any other questions --
13              THE COURT:  No.
14              Ms. Valerio, would you like to speak now?  You can
15    also have an opportunity to speak after the government speaks.
16              THE DEFENDANT:  I just wanted to let you know that I
17    am deeply remorseful for my actions.
18              I'm sorry.
19              THE COURT:  It's not necessary for you to say
20    anything.  I've read your letter.  If it's really hard for you
21    to speak now, it's OK.
22              THE DEFENDANT:  I'm just sorry.  I feel shameful.  I
23    feel like I let my friends, my family, my son down.  But I just
24    want you to know that I am a good person.  What -- that person
25    on that paper is not me.  I had -- I made a wrong decision, but
```

1    I'm a good person.  I'm a good mom, and I'm a great friend.

2    And I just wanted to let you know that.

3            THE COURT:  Let me hear from the government.

4            MR. GIANFORTI:  Your Honor, unless you have any

5    questions for me, we'll rest on our submission.

6            THE COURT:  I do.

7            Can we all agree that we're not really concerned that

8    Ms. Valerio is ever going to commit another crime again?

9            MR. GIANFORTI:  I would agree with that.

10           THE COURT:  Then your argument is not one of specific

11   deterrence.  It's one of general deterrence.  Could you tell me

12   why it would not be either equally or more deterrent for the

13   government, TSA, I guess it is, to do random serious searches

14   of airline personnel who normally walk through with less

15   intrusive searches if they knew that randomly they really could

16   be searched?  Don't you think that would deter them more than

17   putting someone in jail for three months?

18           MR. GIANFORTI:  So, your Honor, I agree that it would

19   have a deterrent value if there was more certainty around

20   screening.

21           THE COURT:  That's in the control of the government,

22   in control of the executive branch, how often they want to do

23   it.  They certainly screen the rest of us.  We don't get to

24   walk through, even if we're federal judges.  We get a better

25   line.

P1uWpujS

 1          MR. GIANFORTI:  That's something.

 2          THE COURT:  That is something.  Absolutely it's

 3   something; it's one of the few perks of the job.

 4          But there is no preset limit to how many searches they

 5   could make, and it just seems to me that if the word got out

 6   and it was acted on, that would be a very effective deterrent.

 7          MR. GIANFORTI:  Your Honor, I agree with you that if

 8   the TSA were to up its game, shall we say, with respect to

 9   people who happen to know this criminal status, that would

10   indeed be a good general deterrent in this area.

11          Also, your Honor, one of the things I learned in the

12   course of this investigation is that the airlines themselves

13   seemed to have been sort of blindsided by this kind of conduct.

14   I spoke to Jet Blue.  I think I spoke to Delta, and I don't

15   think any of them had within their training for incoming flight

16   attendants sort of a basic understanding of customs laws and

17   regulations around declaring cash, not moving cash.  So the

18   government hopes that not only on the public sector side there

19   will be a deterrent effect but also on the private sector side.

20   But I think, your Honor, that absent that, and I'm not aware of

21   there being any changes, there's still a need for general

22   deterrence here because your average flight attendant might see

23   that and say, well, I've never been screened before; I don't

24   see an uptick in screening for people like me, I'm making money

25   doing this.

1           And so there's a need here for an incarceratory

2     sentence to send a message that this kind of conduct will be

3     immediately punished.

4           THE COURT:  Well, that makes a big assumption that

5     anyone's going to learn about it.  And frankly, recently, a

6     sentence of mine, I put somebody in jail for 30 years because

7     they had been dealing with heroin laced with fentanyl resulting

8     in basically eight known deaths, there was not one bit of

9     publicity.  And a lesser sentence probably was sufficient for

10    the person.  So I'm not so confident that there's going to be

11    the type of publicity that would have an impact.  Instead, it

12    seems to me that the government writ large can take the steps

13    to send fear into the views of any airline personnel who get

14    through easily.  And it seems to me, frankly -- and I've

15    thought about this over the years -- that we ought to learn,

16    the government ought to learn, from criminal prosecutions as to

17    where the flaws are in how the government functions.

18          For example, I had one of the many tax cases where

19    preparers create additional dependents from the sky, and yet

20    you can go after that person.  You can put them in jail, but

21    wouldn't it make more sense if money was invested in the IRS so

22    they had a computer system which said, oh, in year one, this

23    person had one kid.  In year two they had four.  Probably we

24    should look into that, because there aren't that many triplets

25    born.  But that never happened.  And it wasn't that it was

P1uWpujS

1    wrong to put that person in jail, but the solution was obvious

2    and so much more effective than having caught people who were

3    cheating on their taxes so the rest of us could pay more.

4              I think you probably have a sense of where I'm going.

5              MR. GIANFORTI:  I do, your Honor.

6              THE COURT:  OK.

7              Ms. Valerio, I'm not putting you in jail.  OK?  I

8    don't think it would serve any good purpose and would cause a

9    lot of harm.

10             Unlike some situations where defendants appeal to me

11   because of their children, my reaction to that is, normally,

12   you should have thought about that before you committed your

13   crime.  In your case, there was no child at the time this crime

14   was committed.  And let me say that I'm not condoning what you

15   did -- it's wrong -- but the question is what price do you pay

16   for it.  And I think you've paid enough of a price.

17             This is no doubt -- I don't really know, and I should

18   have asked the government.

19             Why was there such a gap between the time that they

20   found the money and she lost her job and the filing of the

21   charges here?

22             MR. GIANFORTI:  So, your Honor, the honest answer is

23   this case was handled by multiple AUSAs.  I'm not the first,

24   and it just took a while.

25             THE COURT:  Then there's a period of time where, I

1    don't know, but Ms. Valerio may well have been thinking about

2    this, you know, in the middle of the night and wondering if

3    anything else was going to happen, and this, of course, being

4    the recent time period.  So I'm not even sure exactly what the

5    purpose of home confinement here would be.  It seems to me that

6    essentially her life is home confinement.

7         I remember those days, and so if I put her on home

8    confinement, I'd let her out to take her kid to school.  I'd

9    let her out for every doctor's appointment.  I would let her

10   out for a whole bunch of, to go to church or do things.  It

11   seems to me she's basically home.  If the government has a

12   suggestion as to how that would be meaningful, I'm happy to

13   order it, but it seems to me that's the life she lives now,

14   because there's no electronic monitoring.  It's really you have

15   to be home unless you have a really good reason to leave the

16   house.  And I suspect that is essentially when she leaves the

17   house.

18        So I think I'll leave it at time served, and she's

19   placed on supervised release for one year.

20        I signed the forfeiture order.  That, of course, is a

21   massive sum of money and is part of the punishment.  There's

22   also a $100 special assessment.

23        As far as the supervised release, the mandatory,

24   standard and special conditions are imposed.

25        I'm sure, I assume, that the plea agreement contained

PluWpujS

1    a waiver of the right to appeal, but just in case, I'll mention
2    again that there's 14 days to do so.
3                Is there anything else?
4                MR. GIANFORTI:  Not from the government.
5                MS. CABRERA:  Not from the defense.  Thank you, your
6    Honor.
7                THE COURT:  Very good.  Thank you.
8                (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25